MADDOX, Justice.
The question presented is whether the defendant is entitled to a new trial because of the injection into the case of the fact that the defendant had insurance. We find prejudicial error and reverse.
The matter first arose when the defendant’s attorney sought to cross-examine the plaintiff about a statement contained in a letter which plaintiff’s doctor had furnished to plaintiff’s attorney, but which plaintiff denied having seen:
“MR. PHELPS: Now, Mrs. Norris, I show you a medical report that is marked Defendant’s Exhibit 2, dated November 10, 1975. And that is addressed to your attorney, Mr. Nichols, and signed by Dr. William R. Shamblin. Have you seen that report before?
“THE WITNESS: This one (indicating)?
“Q. Yes, sir.
“A. No, sir.
“MR. NICHOLS: And I object to any further discussion about this, because she could not possibly know what is in there. There is no way for him to cross examine her on this, Your Honor.
“THE COURT: I overrule.
“MR. NICHOLS: I except.
“MR. PHELPS: I will ask you, did Dr. Shamblin, rather than saying what you said on direct examination, did he not in fact, tell you that, T understand that she was in an automobile accident about three months prior to my seeing her for the first time. From my medical standpoint, I find no evidence of injury, and have so advised her. I see no evidence of a sequela related to a previous injury.’
“MR. NICHOLS: Your Honor, I want to renew my objection. I have never run into this before. This is surprise to me that a lawyer would use a medical report to another lawyer, now; if we are going to start doing that, we can go to all pre-trial negotiations, everything that Mr. Phelps’ insurance company has done in trying to settle this case, if we are going to start doing that.
“MR. PHELPS: Now, we move to strike that for the record, and ask the jury to disregard that statement, and move for a mistrial. He knows that is improper, and he knows—
“MR. NICHOLS: You know this is improper, too.
“MR. PHELPS: The Court has ruled this is proper, Mr. Nichols. I don’t have to argue with you about it.
“THE WITNESS: Can I tell what Dr. Shamblin told me about it?
“THE COURT: No, ma’am. You just be quiet, please.
“THE WITNESS: Okay.
“THE COURT: Do you want to insist on your motion for a mistrial, Mr. Phelps?
“MR. PHELPS: Judge, I would ask you to instruct the jury that that was an *1007 improper statement by counsel for plaintiff, and it should be disregarded.
“THE COURT: Mr. Nichols, I understand that you do not agree with my ruling. I have made a ruling, and I don’t wish to argue with you about it. Now, ladies and gentlemen, the statement of Mr. Nichols, the last statement here, would you please disregard that. Do not consider it.
“MR. NICHOLS: Well, let me move for a mistrial, then, to protect the record, because I think this is highly improper and highly prejudicial.
“THE COURT: Motion is denied.
“MR. NICHOLS: We except.”
On redirect examination of the plaintiff, Marvin Norris, insurance was again injected into the case, as follows:
“Q. Did he make any statements to you about how the accident happened?
“A. Yes, sir.
“Q. What did he say?
“A. He apologized to me about it, and said he was real sorry. And he said, T just did not see her.’ He said, T was coming out of the intersection, and she was coming up the road, and I just didn’t see her.’ And he said, ‘I’m sorry; I don’t know how it happened.’ And he told me that he had Allstate Insurance Company, and that he was going to call them the next day.
“MR. PHELPS. We move to exclude that.
“THE COURT: I sustain.”
Then in closing arguments, defendant’s counsel stated:
“She got on the stand, and she said Dr. Shamblin told her, ‘There is not anything I can do.’ Her lawyer asked her, said, ‘Did he tell you that it wasn’t anything he could do for you, it would just take time to heal it?’ And she said yes, sir. What had Dr. Shamblin told her and told her lawyer? Here is the medical report; read it, don’t take my word for it. November 10, 1975: (Reading) ‘William R. Shamblin to Mr. George W. Nichols, Jr. In regard to my medical treatment of Mrs. Marcelle Norris, I submit the following information: I saw her on September 11, 1975, in consultation with Dr. John Buckley.’ He tells what all he did to her. He ends up with this paragraph: ‘I understand that she was in an automobile accident about three months prior to my seeing her for the first time. From my medical standpoint, I find no evidence of injury and have so advised her. I see no evidence of sequela related to her previous injury.’ That is what he told her. He did not tell her that she was hurt, but there was nothing he could do for her. And ladies and gentlemen, they knew that. They knew that when they testified in court yesterday. Is that being fair, being candid? Is that, as was said in an opening statement here, not trying to ‘pull the wool over your eyes’? Think about that. Is that the way we want justice dispensed in our courts? ‘From my medical standpoint, I can find no evidence of injury and have so advised her.’ ”
Plaintiff’s counsel countered:
“ * * * I have known the problems in this lawsuit, and that is why I say you have been selected, hoping that you would bear with me and understand these people right here (indicating), and consider their case, and listen to this evidence, because we ain’t trying to pull any wool over your eyes. No, sir, and I resent Mr. Phelps saying there has been a lack of candor in this case.”
“Ladies and gentlemen, I have furnished Mr. Phelps everything I have. Do you know where he got that letter from Dr. Shamblin? Mr. Callahan fussed at me for giving it to him, but George Nichols gave Mr. Phelps’ company a copy of that letter.
“MR. PHELPS: We object to that statement, Judge.
“MR. NICHOLS: George Nichols furnished it. Now, he brought it out—
“THE COURT: I am going to sustain, Mr. Nichols.
“MR. NICHOLS: I except, Your Hon- or. I furnished them Dr. Shamblin’s re *1008 port, and I told you about it. And I told you about it when I made my opening statement. I made no bones about it; I did not try to hide it. But I furnished them the letter, and under the guise — In my judgment, this was an incorrect procedure; His Honor disagreed with me, so I am certainly abiding by the Court’s ruling. But Mr. Phelps uses a letter sent to me to impeach my client on the stand, which I furnished him to acquaint them of the nature of the lawsuit. And now he comes and reads it to you, and says there is a lack of candor. Where could he get it? He could not get the letter. If this was a lack of candor, do you think George Nichols would have furnished it to them? No, sir, I would have torn it up. Anyway, I gave it to them. A lack of candor? No, sir.”
Dr. Shamblin, who allegedly wrote the letter which caused all the conflict, was not called by the defendant to testify at trial, in person or by deposition.
In our view, had the only reference to insurance been the plaintiff’s counsel’s initial reference to it, which occurred during the plaintiff’s cross-examination, a serious question of waiver of the objection to the reference to the “insurance company” would have been presented. Indeed, the trial court specifically asked defense counsel whether he insisted on his motion for a mistrial and received what was, in effect, a negative response. See generally 29 Am.Jur.2d § 407, at 463. In this case, however, the references to insurance went far beyond that initial exchange and thus leaves us no alternative but to invoke the underlying principle of Sars, Inc. v. Nichols, 275 Ala. 17, 19, 151 So.2d 739 (1963). By reversing this case, however, we are not to be understood as approving the trial court’s action in overruling plaintiff’s objection to the admissibility of testimony concerning the letter from Dr. Shamblin. We note that plaintiff’s counsel also asked for a mistrial at that time.
In our opinion, this case has to be reversed so that it can be tried in an atmosphere free of the prejudicial influence of insurance, and also according to the traditional rules of evidence, free of extraneous matters being injected by either side.
REVERSED AND REMANDED.
TORBERT, C. J., and JONES, SHORES and BEATTY, JJ., concur.